UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SONYA BRADLEY,

                    Plaintiff,

                                              Case No. 14-cv-12303
                                              Honorable Gershwin A. Drain

v.


STEVE ARWOOD, *et al.*,

                    Defendants.

_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT [#9]

### I. INTRODUCTION

Plaintiff Sonya Bradley filed the original complaint [#4] in this case on June 12, 2014. Defendants filed a motion to Dismiss [#6] on July 14, 2014, prompting an amended complaint [#8] from Plaintiff on August 2, 2014.  In her amended complaint, Plaintiff brings claims for purported violations of the Civil Rights Act of 1871, 42 U.S.C. § 1983; Title VII of the Civil rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*.;[1] the First Amendment of the United States Constitution, U.S. CONST. amend. I; the Fourteenth Amendment of the United States Constitution, U.S. CONST. amend. XIV; the Michigan Elliott-Larsen Civil Rights Act (ELCRA) of 1976, MCL 37.2101 *et seq*.; and the Equal Pay Act of 1963, 28 U.S.C. §§ 201 *et seq*. Additionally, Plaintiff brings common law claims for intentional and negligent infliction of emotional distress.

_____

[1] Though Plaintiff states she brings claims under Title VII, none of Plaintiffs Counts in the amended complaint allege that Defendants violated Title VII. *See generally* Dkt. No. 8.

Presently before the Court is Defendant's Motion to Dismiss Plaintiff's First Amended Complaint [#9].  This matter is fully briefed and a hearing was held on October 1, 2014.  For the following reasons, the Court will **GRANT** in part and **DENY** in part Defendant's Motion to Dismiss.

## II. FACTUAL BACKGROUND

Plaintiff, Ms. Sonya Bradley, is a division legal secretary supervisor with the Michigan Licensing and Regulatory Affairs (LARA) Unemployment Insurance Agency (UIA).  Throughout her employment, Plaintiff asserts that Defendants subjected her to an unwritten practice that enforced institutional racism against the Plaintiff and all African-Americans assigned to the Detroit Attorney General's Office.  Plaintiff alleges that Defendants deemed all African-American employees as unfit associates of whites, and took multiple actions to violate her Constitutional rights.

Plaintiff generally alleges that she was discriminated against on the basis of her race and gender, and that she was retaliated against for reporting potential abuses of a government credit card and making complaints of discrimination to the Equal Employment Opportunity Commission ("EEOC").  Plaintiff has alleged, amongst other allegations, that she was harassed and discriminated against because she has been instructed to follow the directives of her supervisors as to how to complete her work, denied overtime, had her performance criticized, given negative performance appraisals, placed on a performance improvement plan, and given written counseling.

Plaintiff alleges that she was treated differently than other employees employed in her capacity.  She alleges that Defendants Shuette and Arwood are liable as her employers, and that Defendants Przekop-Shaw, Kotula, and Russell are liable as her supervisors.

# III. LAW & ANALYSIS

## A.      Standard of Review

Federal Rule of Civil Procedure 12(b)(6) allows the court to make an assessment as to whether the plaintiff has stated a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6).  "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  Even though the complaint need not contain "detailed" factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Bell Atlantic*, 550 U.S. at 555).

The court must construe the complaint in favor of the plaintiff, accept the allegations of the complaint as true, and determine whether plaintiff's factual allegations present plausible claims.  To survive a Rule 12(b)(6) motion to dismiss, plaintiff's pleading for relief must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*  (citations and quotations omitted).  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).   "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 678.

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Id.*  The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.*  "[W]here the well-pleaded facts do not

permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'– 'that the pleader is entitled to relief.' " *Id.* at 679.

**B.      Legal Analysis**

Defendants argue that Plaintiff has failed to satisfy both the *Twombly* and *Iqbal* pleading standards, and, thus, argue that Plaintiff's amended complaint should be dismissed in its entirety. To the contrary, Plaintiff asserts that she has satisfied the *Twombly* and *Iqbal* standards.   The Court's analysis is explained herein.

> **1.      Plaintiff's Section 1983 Claims for Discrimination, Hostile Work Environment, and Retaliation Claims Against Defendants Arwood and Schuette (Counts I-III) Will Be Dismissed Because Section 1983 Liability May Not be Based on *Respondeat Superior***

Counts I-III of Plaintiff's Amended Complaint assert that Defendants Arwood and Schuette violated Section 1983 and the First Amendment by discriminating and retaliating against plaintiff, and creating a hostile work environment. *See* Dkt. No. 8 at 18-22.  Defendants assert that Counts I-III of Plaintiff's first amended complaint should be dismissed because Defendants assert that Plaintiff did not allege that Defendants Arwood and Schuette took any specific wrongful actions.  Dkt. No. 9 at 7-8.

To make this point, Defendants note that the only mention of Defendants Arwood and Schuette in the complaint is a reference to the fact that they were the employer of Plaintiff.  *See* Dkt. No. 9 at 8. This being the case, Defendants argue that any potential liability of these Defendants would be foreclosed due to the fact that state actors cannot be held liable under a theory of *respondeat superior* under Section1983. *Id.* at 7-9.

Plaintiff appears to contend that the Defendants Arwood and Shuette should be liable because "any reasonable person in [Defendant Arwood and Schuette's] positions would know or, at a minimum, should have known, of the Plaintiff's repeated reports of abuses to numerous

-4-

high-ranking officials in their administration." Dkt. No. 11 at 6.  Plaintiff argues that Defendants Arwood and Schuette failed to follow their own policy of ensuring transparency in government by ignoring Plaintiffs report of alleged credit card abuses. *Id.* at 6-7.  In so doing, Plaintiff argues that Defendants Arwood and Schuette permitted continued discrimination and retaliation, for which Plaintiff is seeking injunctive relief. *Id.*

The Court agrees with Defendants.  Assuming Plaintiff's allegations against Defendants Arwood and Schuette are true; Plaintiff's allegations are still nothing more than an attempt to improperly impose *respondeat superior* liability on these Defendants who had no direct role in the alleged discriminatory actions. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 n.58 (1978) (finding that Section 1983 supervisory liability may not be based on *respondeat superior*, but only on the supervisor's own wrongful acts or omissions); *Leary v. Daeschner*, 349 F.3d 888, 903 (6th Cir. 2003) (finding that supervisory liability "must be based on more than the right to control employees. Likewise, simple awareness of employees' misconduct does not lead to supervisory liability.") (citations omitted)

Here, Plaintiff offers no evidence of personal involvement on behalf of Defendants Arwood and Schuette, and does not advance an argument to overcome the fact that *respondeat superior* is inapplicable to these two Defendants. Accordingly, the Court will dismiss Counts I-III from this action because Plaintiff's allegations do not establish the requisite level of personal involvement required to impose Section 1983 liability against Defendants Arwood and Schuette.

**2. Plaintiff's Equal Pay Act Claim (EPA) Against Defendants Arwood and Schuette (Count IV) will be Dismissed Because These Defendants are Not the Employers of Plaintiff Under the FLSA**

Count IV of Plaintiff's Amended Complaint asserts that Defendants Arwood and Schuette violated the Equal Pay Act. *See* Dkt. No. 8 at 22.  In Plaintiff's amended complaint, she asserts that "[a]t all material times, [she] was an employee, and Defendants Schuette and/or Arwood were her employer, covered by and within the meaning of the Equal Pay Act."  *Id.* at ¶ 130.  Defendants argue that Count IV should be dismissed because Defendants Arwood and Schuette are the supervisors of Plaintiff–not the employers–and, thus, cannot be sued by Plaintiff under the EPA.  Dkt No. 6 at 10-11.  Plaintiff does not address Defendants' argument.

The Court agrees with Defendants.  Neither the Supreme Court nor the Sixth Circuit has considered whether public officials are individually liable under the EPA.  Notably, however, the Sixth Circuit has extensively analyzed the language of the Fair Labor Standards Act (FLSA) and its counterpart, the Family Medical Leave Act (FLMA), to find that "[o]ur independent examination of the FMLA's text and structure reveals that the statute does not impose individual liability on public agency employers." *Mitchell v. Chapman*, 343 F.3d 811, 829 (6th Cir. 2003).

To succinctly explain its reasoning, the court in *Mitchell* explained three factors that helped them reach their conclusion:

> Three factors emanating from the text and framework of the statute support this conclusion. First, Section 2611(4)(A) segregates the provision imposing individual liability from the public agency provision. Second, an interpretation that commingles the individual liability provision with the public agency provision renders certain provisions of the statute superfluous and results in several oddities. Finally, as evidenced by other provisions of the statute, the FMLA distinguishes its definition of employer from that provided in the FLSA by separating the individual liability and public agency provisions.

*Mitchell v. Chapman*, 343 F.3d 811, 832 (6th Cir. 2003).  The holding from *Mitchell* is important because it highlights how the EPA is to be interpreted.  On its face, the EPA defines "employer"

to include "any person acting directly or indirectly in the interest of an employer in relation to an employee *and includes a public agency* . . . ." 29 U.S.C. § 203(d) (emphasis added).

Unsurprisingly, given the plain language of the statute, some courts have held that public agency employers can be individually liable under the EPA. *See*, *e.g.*, *Stephen v. Creal,* No. 2:04CV648, 2005 WL 1159411, at *6 (S.D. Ohio 2005) (determining that a public agency employer could be individually liable under the EPA because the Defendant's authority "[did] not rise to the level of operational control warranting individual liability."); *see also Fraternal Order of Police Barkley Lodge # 60, Inc. v. Fletcher,* 618 F. Supp. 2d 712, 721-22 (W.D. Ky. 2008) (finding that the plain meaning of the FLSA unambiguously permitted individual liability for public employers); *Darby v. Bratch,* 287 F.3d 673, 681 (8th Cir. 2002) (holding that the FMLA permits public officials to be sued in their individual capacities).

However, the court in *Mitchell* delved deep into the legislative history and pertinent regulations from the Secretary of Labor to examine the text of the FLSA and determine that Congress never actually intended for the text of the FLSA to impose individual liability on public employees. *See Mitchell*, 343 F.3d at 832 (quoting *Keene v. Rinaldi,* 127 F. Supp. 2d 770, 775 (M.D.N.C. 2000)) (" 'In 1974 Congress merely engrafted "Public Agency" into the FLSA by adding to an existing definition for private employers. This did create an ambiguous situation concerning the liability of public agency employees. But, in the FMLA, Congress explicitly took "Public Agency" out of the private employer definition and disconnected it from liability based on a person acting directly or indirectly in the interest of an employer[. A] better way to view the situation is that the FMLA corrected the ambiguity of the FLSA, as opposed to letting the ambiguity of the FLSA control the interpretation of the FMLA."); *Id.* at 832 ("[T]his Court has never extended individual liability to public employees under the FLSA.").

Given this interpretation, Courts have more recently found that the EPA precludes claims against public employers because the FMLA was modeled after the FLSA, and Congress decided to remove all ambiguity regarding individual liability for public employers. *See*, *e.g.*, *Dixon v. University of Toledo,* 638 F. Supp. 2d 847 (N.D. Ohio 2009) (citing *Wascura v. Cancer,* 169 F.3d 683, 686 (11th Cir. 1999) (finding the FLSA and the FMLA as essentially twin statutes and finding that a public official is not an "employer" in her individual capacity "because it is only in her official capacity that she has authority over the employee's terms of employment."); *Campbell v. Kelly*, No. 3:09-CV-435, 2011 WL 3862019, at *5 (S.D. Ohio Aug. 31, 2011) (finding that it would be "incongruous to permit FLSA claims against individual public employers, but not claims under the FMLA, which was specifically modeled on the former."); *Millington v. Morrow Cnty. Bd. of Commrs.,* No. 3:06-CV-347, 2007 WL 2908817, at *13 (S.D. Ohio 2007) (relying on *Mitchell* to find that the FLSA does not permit individual liability for public officials).  The Court will follow this emerging trend, which recognizes that Congress never actually intended for the text of the FLSA to impose individual liability on public employees.  Accordingly, the Court will dismiss Count IV.

### 3. Plaintiff's Discrimination, Hostile Work Environment, and Retaliation Claims Against Defendants Przekop-Shaw, Kotula, and Russell Under Section 1983 and the First and Fourteenth Amendments of the United States Constitution (Counts V-VII, X-XII, XV)

Seven out of Plaintiff's eighteen counts (Counts V-VII, X-XII, and XV) allege that the Defendants deprived her of her constitutional rights in violation of the Civil Rights Act of 1871. The Civil Rights Act of 1871 is found in Title 42, section 1983 of the United States Code and commonly referred to as Section 1983. *See* 42 U.S.C. § 1983.  Under Section 1983, a plaintiff may bring a claim against any person who, "under color of state law causes the deprivation of any rights, privileges, or immunities secured by the Constitution." *Id.*  Two elements are required

to establish a prima facie case under Section 1983: There must be conduct by someone acting under color of state law, and the conduct must deprive Plaintiff of her rights secured by the Constitution or laws of the United States. *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981).

Here, Plaintiff points to no specific law for the violation of her rights, but instead the Constitution of the United States. Specifically, in Counts V, X, and XV, Plaintiff asserts that Defendants Przekop-Shaw, Kotula, and Russell each violated Section1983 by (1) discriminating against her and denying her the equal protection of the laws pursuant to the Fourteenth Amendment, and (2) depriving her of her First Amendment rights.

In Counts VI, and XI, Plaintiff asserts that Defendants Przekop-Shaw and Kotula each violated §1983 by creating a hostile work environment and denying her the equal protection of the laws pursuant to the Fourteenth Amendment. Finally, in Counts VII and XII Plaintiff contends that Defendants Przekop-Shaw and Kotula each violated §1983 by retaliating against her and denying her the equal protection of the laws pursuant to the Fourteenth Amendment.

Accordingly, given these claims, Plaintiffs complaint must show that she was either intentionally or recklessly deprived of a federal constitutional right. *See Board of Regents v. Roth,* 408 U.S. 564, 571, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). This is the case because Section 1983 is only a remedial statute that provides a remedy for the violation of rights created elsewhere; it does not create substantive rights. *See Day v. Wayne Cnty. Bd. of Auditors*, 749 F.2d 1199, 1202 (6th Cir. 1984) (citing *Chapman v. Houston Welfare Rights Organization,* 441 U.S. 600, 616–18, 99 S.Ct. 1905, 1915–16, 60 L.Ed.2d 508 (1979)).

**a. Plaintiff's Section 1983 Claims for Discrimination Under the First Amendment and the Equal Protection Clause of the Fourteenth Amendment (Counts V, X, and XV) Will Be Dismissed**

**i. Plaintiff's Section 1983 Claims for Discrimination Under the Equal Protection Clause of the Fourteenth Amendment Will be Dismissed Because There is No Evidence of Discriminatory Intent or Disparate Treatment**

Plaintiff contends that Defendants Przekop-Shaw, Kotula, and Russell intentionally discriminated against and harassed her because of her race. Dkt. No. 8 at ¶¶ 140, 179, 216. Furthermore, Plaintiff contends that Defendant Kotula, additionally, discriminated against Plaintiff on the basis of her sex. *Id.* at ¶ 179.

Even though Plaintiff's claims are based upon Section1983 alone, and not Title VII, Plaintiff is not foreclosed from bringing her discrimination claim under Section 1983. *See Toth v. City of Toledo*, 480 F. App'x 827, 831 (6th Cir. 2012) (citing *Annis v. Cnty. of Westchester,* 36 F.3d 251, 255 (2d Cir.1994), which held "that an employment discrimination plaintiff alleging the violation of a constitutional right may bring suit under § 1983 alone, and is not required to plead concurrently a violation of Title VII.").

The Sixth Circuit has noted that an employee can bring a successful Section 1983 claim under the Fourteenth Amendment's Equal Protection Clause, so long as the Plaintiff proves the same elements that are required in order to establish a disparate treatment claim under Title VII. *See Arnold*, 515 F. App'x at 539 (citing *Gutzwiller v. Fenik,* 860 F.2d 1317, 1325 (6th Cir.1988)) ("The showing a plaintiff must make to recover on a disparate treatment claim under Title VII mirrors that which must be made to recover on an equal protection claim under section 1983."); *see also Day v. Wayne Cnty. Bd. of Auditors*, 749 F.2d 1199, 1205 (6th Cir. 1984) (citing *Grano v. Department of Development, City of Columbus,* 637 F.2d 1073 (6th Cir.1980)).  Regardless,

however, whether Plaintiff's claims are brought under Title VII or the Equal Protection Clause, the Court finds that the Plaintiff's complaint is insufficient as a matter of law.

Since Plaintiff asserts Defendants have violated the Fourteenth Amendment, she is required to show that " 'the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person.' " *Arnold v. City of Columbus*, 515 F. App'x 524, 538-39 (6th Cir. 2013) *cert. denied*, 134 S. Ct. 532, 187 L. Ed. 2d 370 (U.S. 2013) (citing *Wright v. MetroHealth Med. Ctr.,* 58 F.3d 1130, 1137 n. 7 (6th Cir.1995)); *see also Arlington Heights v. Metro. Hous. Dev. Corp.,* 429 U.S. 252, 265, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977) ("Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause.").

"In order to establish an equal protection violation against a public employer in a section 1983 action, a plaintiff must show that the employer made an adverse employment decision 'with a discriminatory intent and purpose.' " *Boger v. Wayne Cnty.,* 950 F.2d 316, 324–25 (6th Cir.1991) (citation omitted).  The plaintiff must establish that the employment decision at issue would not have been made "but for" the plaintiff's race. *Weberg v. Franks*, 229 F.3d 514, 522 (6th Cir. 2000).  Thus, Plaintiff must prove that "discriminatory intent more likely than not was the basis of the adverse employment action." *Gutzwiller v. Fenik,* 860 F.2d 1317, 1325 (6th Cir.1988) (citation and internal quotation marks omitted).

The Sixth Circuit has stated definitively that in Title VII cases a "plaintiff has the burden of establishing a *prima facie* case of discrimination 'either by direct evidence or circumstantial evidence.' " *Birch v. Cuyahoga Cnty. Probate Court*, 392 F.3d 151, 164 (6th Cir. 2004) (citing *Shepard v. Griffin Servs., Inc.,* No. 19032, 2002 WL 940110, at *3 (Ohio Ct. App. May 10,

-11-

2002), quoting *Teamsters v. United States,* 431 U.S. 324, 357–58, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977)).

In support of her discrimination claims, Plaintiff claims that, in 2010, before she worked in the office of Defendant Arwood, a Mr. Michael Lockman shouted at her to "bring your Black ass back in here." Dkt. No. 8 at ¶ 25.  Further, in 2014, while working for Defendants, Plaintiff claims that a Ms. LoRita Baker, another African-American, shouted out to the Plaintiff: "Put your big girl panties on, we all have folks who may treat us differently but you are under a microscope not them." *Id.* at ¶ 88(e).

However, neither of these incidents directly involves any of the Defendants.  The Sixth Circuit explains the distinction between direct and circumstantial evidence as follows:

> Direct evidence is 'evidence which, if believed, proves the existence of improper discrimination animus without inference or presumption.' Evidence either of statements made by non-decision makers or of statements made by decision-makers that are not related to the decisional process itself do not satisfy the plaintiff's burden of demonstrating direct evidence of discriminatory animus. Instead, a plaintiff must show a direct correlation between the evidence of discrimination and the specific employment decision in question.

*Birch v. Cuyahoga Cnty. Probate Court*, 392 F.3d 151, 164-65 (6th Cir. 2004).  Accordingly, given this standard, the Court finds that Plaintiff has presented no direct evidence of discrimination on behalf of any of the Defendants; thus, she must prove discrimination through circumstantial evidence. *See Toth v. City of Toledo*, 480 F. App'x 827, 832 (6th Cir. 2012).

Circumstantial evidence can be used to prove discriminatory intent in disparate treatment cases. *See Grano v. Dep't of Dev. of City of Columbus*, 637 F.2d 1073, 1081 (6th Cir. 1980) (citing *Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265-266, 97 S.Ct. 555, 563-64, 50 L.Ed.2d 450) (holding that "[p]roof of discriminatory motive is critical, although it can in some situations be inferred from the mere fact of differences in treatment.").  Here, Plaintiff's

claims appear to be for "disparate treatment," which involve situations where an "employer simply treats some people less favorably than others because of their race, color, religion, sex, or national origin." *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977). However, it must be reiterated that "under the disparate treatment theory, the plaintiff must prove discriminatory intent." *Grano*, 637 F.2d at 1081 (citing *Furnco Const. Corp. v. Waters*, 438 U.S. 567, 5775, 98 S. Ct. 2943, 2949, 57 L. Ed. 2d 957 (1978)).

To show differences in treatment in the Sixth Circuit, a Plaintiff bears the burden of showing that an employer intentionally "treats some people less favorably than others because of their race, color, religion, sex, or national origin." *Stotts v. Memphis Fire Dep't*, 858 F.2d 289, 294 (6th Cir. 1988) (citing *Int'l Bhd. of Teamsters*, 431 U.S. at 335 n.15). In cases like this, the Plaintiff must allege and show that the Defendants routinely disciplined her more severely than whites for comparable violations, because "[t]he ultimate factual issue[ is] .. ... simply whether there was a pattern or practice of such disparate treatment and, if so, whether the differences were 'racially [or sexually] premised.' " *Id.* (quoting *Teamsters,* 431 U.S. at 335, 97 S.Ct. at 1854).

"Proof of illicit motive is essential, but . . . illicit motive may be inferred from a sufficient showing of disparity between members of the plaintiff class and comparable qualified members of the majority group." *Id.* (citing *Segar v. Smith,* 738 F.2d 1249, 1265–66 (D.C. Cir. 1984). Thus, for Plaintiff to make her case, she must eliminate "the most common nondiscriminatory reasons for the plaintiff's [perceived slights]." *Id.* (citing *Burdine,* 450 U.S. at 253–54, 101 S.Ct. at 1094).

Assuming the allegations set forth in Plaintiff's complaint are true, the facts as plead fail to provide the Court with a set of plausible facts demonstrating that Defendant's actions were

-13-

"more than a mere occurrence of isolated or 'accidental' or sporadic discriminatory acts." *Id.* (citing *Teamsters,* 431 U.S. at 336, 97 S.Ct. at 1855 (footnote omitted)). Nothing demonstrates that Plaintiff was treated differently than her white or male counterparts.  Nothing in the given facts demonstrates "that racial discrimination was the Company's standard operating procedure—the regular rather than the unusual practice." *Id.* (citing *Teamsters,* 431 U.S. at 336, 97 S.Ct. at 1855 (footnote omitted)).

In sum, Plaintiff fails to demonstrate that the actions by Defendants were "racially premised." *Stotts*, 858 F.2d at 294 (quoting *Teamsters,* 431 U.S. at 335, 97 S.Ct. at 1854). Plaintiff's complaint is littered with conclusory allegations, none of which demonstrate that the Defendants' treatment of Plaintiff was based on the race of the parties.

For example, in Plaintiff's response, she asserts that "Defendant Przekop-Shaw immediately retaliated against the Plaintiff and her staff based on race by subjecting them to verbal abuse, harassment and often refused to respond to Plaintiff's inquiries on office procedure, quality of work of LARA staff, and usage of software tools/applications necessary to complete filing tasks." Dkt. No. 8 at ¶ 34.  Plaintiff provides this as an example of racial discrimination, but this is a conclusory allegation because Plaintiff does not provide any facts that show this was based on racial bias or a discriminatory motive.

The most illustrative example of the many conclusory allegations scattered throughout Plaintiff's complaint reads as follows:

> Plaintiff's race was a factor that made a difference in Defendants decision[s]. . . . If Plaintiff were Caucasian, she would not have been subjected to unwelcomed contact intended to intimidate and harass her; she would not have had her numerous complaints go unanswered and/or ignored, she would not have been denied the opportunity to receive appropriate authority based on her position, she would not have been segregated from the rest of her team members, she would not have been retaliated against by her immediate and division supervisors, she would not have been placed on a performance improvement

-14-

plan but rather she would have been treated fairly like the Caucasian employees on the labor division team.

Dkt. No. 8 at ¶¶216, 217. The repeated shortcoming of Plaintiff's arguments is illuminated in this allegation, which serves as a prime example of how Plaintiff asserts that Defendants discriminated against her based on race, but provides no facts to support the assertion.

Accordingly, Plaintiff has provided no indication, beyond conclusory assertions, that racial discrimination was the standard operating procedure of Defendants.  The fact that Plaintiff is African-American and Defendants are Caucasian, without more, is insufficient to show racial discrimination  when the Plaintiff has given no facts to indicate that the Plaintiff's race or gender played a role in the actions about which she complains.

The statement by Mr. Lockman involving race–which all of the Counts are based upon–is inconsequential because it was made by an individual who is not a party to this action and does not work with any of the Defendants.[2]  Further, the statement occurred in 2010: before Plaintiff transferred to LARA, before Defendant Schuette was elected  as the Attorney General, and before any of the Defendants were Plaintiff's supervisor.

The statement by Ms. Baker involving Plaintiff's sex–which is the basis of Plaintiff's discrimination claim only alleged against Defendant Kotula–was not made by any of the Defendants.  Defendant's Kotula and Przekop-Shaw were allegedly in the room when this one statement was made, but they did not make the statement. Looking at these facts as plead, and assuming they are true for the purposes of this motion, neither of these statements demonstrate that "discrimination was the Company's standard operating procedure—the regular rather than

---

[2] Plaintiff alleges that Defendant Przekop-Shaw "became enraged with Plaintiff and spitefully threatened to transfer Mr. Lockman to the section in effort [sic] to intimidate Plaintiff and allow him to continue to harass and bully Plaintiff if she did not stop complaining of issues in the office and 'disobeying her.' "  Dkt No. 8 at 42.  This, also, is a conclusory allegation, as Plaintiff does not indicate that Defendant Przekop-Shaw even knew of the alleged racial statement made by Mr. Lockman.  Accordingly, the Court cannot even draw the inference that Defendant Przekop-Shaw's reference to Mr. Lockman was a spiteful threat of intimidation and harassment.

-15-

the unusual practice." *Stotts*, 858 F.2d at 294 (citing *Teamsters,* 431 U.S. at 336, 97 S.Ct. at 1855 (footnote omitted)). Accordingly, the Court concludes that Plaintiff has failed to allege facts showing intentional discrimination, let alone any facts showing a direct correlation between discrimination and a specific employment decision.

> ### ii. Plaintiff's Section 1983 Claims for Discrimination Under the First Amendment Will Be Dismissed Because Plaintiff Has Not Demonstrated the Occurrence of an Adverse Employment Action

In order to adequately plead a prima facie case of First Amendment retaliation, a plaintiff "must demonstrate that: (1) he engaged in constitutionally protected speech or conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by his protected conduct." *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 255 (6th Cir. 2006) (citation omitted); *see also Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012); *Mezibov v. Allen,* 411 F.3d 712, 717 (6th Cir.2005) (citing *Thaddeus–X v. Blatter,* 175 F.3d 378, 394 (6th Cir.1999) (en banc)).

For the first element, public employees like Plaintiff must satisfy additional standards to establish that the speech at issue is constitutionally protected. *See Leary,* 349 F.3d at 897.  First, public employees must demonstrate that the speech involved matters of public interest or concern. *Id.* (citing *Cockrel v. Shelby County Sch. Dist.,* 270 F.3d 1036, 1048 (6th Cir. 2001)). Second, Plaintiff must show that her interests in addressing the matters of public concern outweigh the interest of his employer "in promoting the efficiency of the public services it performs through its employees." *Id.* (quoting *Pickering v. Bd. of Educ. of Twp. High Sch. Dist.*

-16-

*205,* 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968)); *see also Garcetti v. Ceballos,* 574 U.S. 410, 418–20 (2006).

The determination of whether the speech at issue touches on a public matter is a question of law for the court to decide. *See Fox v. Traverse City Area Public Schs. Bd. of Educ.,* 605 F.3d 345, 350 (6th Cir. 2010); *Barnes v. McDowell,* 848 F.2d 725, 733 (6th Cir. 1988). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick v. Myers,* 461 U.S. 138, 147–148, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983).

The Sixth Circuit has emphasized that the proper inquiry is not what might be "incidentally conveyed" by the speech and that "passing" or "fleeting" references to an arguably public matter do not elevate the speech to a matter of "public concern" where the "focus" or "point" of the speech advances only a private interest. *Farhat v. Jopke,* 370 F.3d 580, 592–93 (6th Cir. 2004).

Plaintiff asserts that her EEOC complaints and her report of potential abuse of a government credit card constitute protected activity under the First Amendment. As a matter of law, the Court finds that Plaintiff's EEOC complaints did not constitute protected activity. All of Plaintiff's EEOC charges emphasized complaints of internal discrimination and harassment involving race, and potential retaliation for those EEOC complaints. The Sixth Circuit has found that "matters of public concern are to be contrasted with internal personnel disputes or complaints about an employer's performance." *Brandenburg v. Hous. Auth. of Irvine,* 253 F.3d 891, 898 (6th Cir. 2001). Accordingly, this Court finds that the EEOC charges did not encompass matters of public concern. *See, e.g., Laster v. City of Kalamazoo,* No. 1:11-CV-1061,

-17-

2013 WL 1786014, at *7 (W.D. Mich. Apr. 25, 2013) *aff'd in part, rev'd on other grounds, and remanded*, 746 F.3d 714 (6th Cir. 2014), *reh'g denied* (Apr. 2, 2014).

However, with respect to the Plaintiffs reports of potential abuses of a government credit card, Plaintiff has demonstrated that she engaged in protected speech. Specifically, plaintiff alleges: (1) that she was tasked with assuring filing fees were processed with her government credit card, (2) that on or about October 2011she became aware of potential abuses with the government credit card, (3) that she reported these abuses to senior officials, and (4) that Defendant Przekop-Shaw immediately became irate, defensive, and retaliated against Plaintiff. For the purposes of this motion the Court assumes that all of these allegations are true, and, accordingly finds that this meets the requirements of protected First Amendment activity. *See Farhat,* 370 F.3d at 592–93.

Given this protected activity, Plaintiff must next satisfy the second and third requirements set forth by the Courts in this Circuit. To reiterate, those requirements require Plaintiff to show an adverse employment action was taken against her that would deter a person of ordinary firmness from continuing to engage in that conduct, and that the adverse employment action was motivated at least in part by her protected conduct. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 255 (6th Cir. 2006) (citation omitted).

The Court finds that Plaintiff has failed to satisfy these last two requirements through her pleading. With regard to the second requirement, specifically, the Sixth Circuit has defined an adverse employment action as an action "that would deter a person of ordinary firmness from the exercise of the right at stake." *Thaddeus–X v. Blatter et al.,* 175 F.3d 378, 396 (6th Cir. 1999) (en banc) (internal citations omitted). The Sixth Circuit has stated that the test must consider whether alleged adverse employment actions "would chill or silence a person of ordinary

firmness from future First Amendment activities." *Ctr. for Bio–Ethical Reform, Inc. v. City of Springboro,* 477 F.3d 807, 822 (6th Cir. 2007) (internal quotation marks omitted). According to the Sixth Circuit, "[t]he term 'adverse action' has traditionally referred to actions such as discharge, demotions, refusal to [h]ire, nonrenewal of contracts, and failure to promote." *Handy–Clay v. City of Memphis,* 695 F.3d 531, 545 (6th Cir. 2012) (quoting *Thaddeus-X,* 175 F.3d at 396) (internal quotation marks omitted) (alteration in original). However, the Sixth Circuit also stated that this Court is "required to tailor[ ] our analysis under the adverse action prong to the circumstances of this specific retaliation claim." *Mezibov v. Allen,* 411 F.3d 712, 721 (6th Cir. 2005).

To be more specific, the Sixth Circuit has found that purely personal reasons for preferring a former state of affairs to the current state of affairs do not constitute an adverse employment action. *See Strouss v. Michigan Dep't of Corr.*, 250 F.3d 336, 343 n.2 (6th Cir. 2001) (citing *Darnell v. Campbell Cnty. Fiscal Court,* 924 F.2d 1057 (6th Cir. 1991)). "[A]n employer's commencement of an investigation is not enough[, . . . and] criticisms, accusations, threats, or 'bad mouthing' are not enough." *Magley v. Wright*, No. 5:98-CV-012, 2001 WL 36126924, at *17 (W.D. Mich. Mar. 30, 2001) (internal citations omitted). Furthermore, "[r]eassignments without changes in salary, benefits, title, or work hours usually do not constitute adverse employment action." *Policastro v. Northwest Airlines, Inc.,* 297 F.3d 535, 539 (6th Cir. 2002).

Plaintiff fails to show that an adverse employment action occurred, let alone that an adverse employment action resulted as a result of her protected activity; as required per the third requirement for a prima facie case. For example, in Plaintiff's complaint she alleges that she took part in the protected activity in October 2011. Next, Plaintiff, in a conclusory fashion,

alleges that Defendant Przekop-Shaw immediately retaliated against Plaintiff's for Plaintiff's report of potential credit card abuse. *See* Dkt. No. 8 at ¶ 33.  Plaintiff does not provide any specific information on how she knew Defendant Przekop-Shaw was irate and defensive towards Plaintiff, and conspicuously notes that Defendant Przekop-Shaw was not her supervisor at the time, and was working in a different location in Lansing, Michigan. *Id.* at ¶ 29, 33.

Assuming Plaintiff's allegations are true, Defendant Przekop-Shaw's becoming irate and defensive towards Plaintiff still does not constitute an adverse employment action. *See Handy–Clay,* 695 F.3d at 545 (quoting *Thaddeus-X,* 175 F.3d at 396) ("The term 'adverse action' has traditionally referred to actions such as discharge, demotions, refusal to [h]ire, nonrenewal of contracts, and failure to promote.") (internal quotation marks omitted) (alteration in original).

Continuing on to the next of Plaintiff's allegations, Plaintiff alleges that Defendant Przekop-Shaw "immediately" retaliated against Plaintiff and her staff "based on race by subjecting them to verbal abuse, harassment and often refused to respond to Plaintiff's inquiries on office procedure, quality of work of LARA staff, and usage of software tools/applications necessary to complete filing tasks." *See* Dkt. No. 8 at ¶ 34.

Although Plaintiff does not indicate what made up the verbal abuse and harassment, assuming these allegations are true, these allegations also do not appear to constitute an adverse employment actions because these alleged actions do not appear to be actions that would deter a person of ordinary firmness from the exercise of the right at stake. *See Magley v. Wright*, No. 5:98-CV-012, 2001 WL 36126924, at *17 (W.D. Mich. Mar. 30, 2001) ("An employer's commencement of an investigation is not enough[, . . . and] criticisms, accusations, threats, or 'bad mouthing' are not enough.") (internal citations omitted).

-20-

Plaintiff further alleges that she was rebuffed in her attempts to foster a professional working relationship with Defendant Przekop-Shaw, but provides no specific details of being rejected or spurned by Defendant Przekop-Shaw. *See* Dkt. No. 8 at ¶ 37.   Like Plaintiff's previous allegations, this also does not appear to be an adverse employment action. *See Handy–Clay,* 695 F.3d at 545.

It is not until September 12, 2012 – nearly a year after Plaintiff reported the potential abuse of the government credit card – that Plaintiff alleges Defendant Przekop-Shaw became Plaintiff's immediate supervisor by "effectively and intentionally demoting" Plaintiff's previous supervisor.   *Id.* at ¶ 38.   Once Defendant Przekop-Shaw was Plaintiff's supervisor, Plaintiff alleges that, "Defendant Przekop-Shaw immediately based on race started bullying and harassing the Plaintiff and her staff by:

   a. Created [sic] barriers in an attempt deny Plaintiff's personal leave requests.
   b. Refused [sic] to approve and/or pay Plaintiff's compensation time and overtime indicating Plaintiff was expected to work overtime without compensation.
   c. Attempted [sic] or threaten to terminate members of the Plaintiff staff, who are all African American, without cause.
   d. Upset with Plaintiff for following the LARA Unemployment Insurance Agency (UIA) unit process and for clarifying the credit card use policy, Defendant Przekop-Shaw advised Plaintiff to never question her again (slave/master tone) and to take her direction from Amy Gonea who is a Caucasian female of equal grade and status to the Plaintiff.

*See* Dkt. No. 8 at ¶ 39.   Again, despite the fact that these assertions are conclusory and lack detail, assuming these allegations by Plaintiff are true, it appears that all of Plaintiff's proffered reasons are not adverse employment actions.

As this Court has previously held, "criticisms, accusations, threats, or bad mouthing are not enough." *Mills v. Willams*, 476 F. Supp. 2d 653, 662 (E.D. Mich. 2007) *aff'd sub nom. Mills v. Williams*, 276 F. App'x 417 (6th Cir. 2008).   Though it is not an absolute rule, this Circuit has stated repeatedly that an adverse employment action is traditionally an action involving

-21-

"discharge[s], demotions, refusal[s] to [h]ire, nonrenewal of contracts, and failure to promote." *Handy–Clay,* 695 F.3d at 545 (quoting *Thaddeus-X*, 175 F.3d at 396) (internal quotation marks omitted) (alteration in original). The alleged "bullying" asserted by Plaintiff does not come close to meeting the standard set forth by the Sixth Circuit.

Plaintiff continues on to recite a litany of conclusory allegations to support her claim that Defendants Przekop-Shaw, Kotula, and Russell retaliated against her. *See* Dkt. No. 8 at ¶¶ 40-101. Assuming all of these allegations by Plaintiff are true, the Court still finds that none of these allegations pass muster. For example, Plaintiff alleges that she received letters of termination from the Defendants, but does not indicate that she was terminated; therefore, there was no actual adverse employment action. *See id.* at ¶49 (referring to letters of threatened termination). *But see Mills*, 476 F. Supp. 2d at 662 (stating threats are not enough).

Plaintiff also alleges that there were fabricated investigatory conferences involving her, but does not allege that discipline was imposed; thus, no adverse employment action occurred. *See* Dkt No. 8 at ¶¶ 88, 89 (referring to an alleged fabricated investigatory conference). *But see Magley*, WL 36126924, at *2 (finding no adverse action from an alleged false disciplinary memo because there was "no evidence of discipline" relating to the incident).

As a final example, Plaintiff asserts that she was required to cancel a cruise while she was in Miami in order to return to Detroit in May of 2014, due to the malicious actions of Defendant Kotula. *See* Dkt. No. 8 at ¶ 93. Besides this being a conclusory allegation – as there is not even an attempt to explain how Defendant Kotula acted maliciously – this allegation is also not an adverse employment action because it does not deal with a discharge, demotion, refusal to hire, nonrenewal of contract, or a failure to promote.

-22-

Additionally, the Court finds that Plaintiff has failed to satisfy the final requirement of her claim by demonstrating a prima facie case, because she fails to show that her First Amendment protected activity caused any of these purported adverse employment actions. The Court has already explained how Plaintiff's allegations against Defendant Przekop-Shaw regarding the purported "immediate" defensive behavior towards Plaintiff did not demonstrate an adverse employment action. Beyond this, Plaintiff's next allegation following the October 2011 report of the potential abuse of a credit card occurs in June of 2012. *See* Dkt. No. 8 at ¶ 37.

The allegations in June of 2012, and any actions beyond this point, are "much too attenuated from her protected speech for this Court to find that the speech caused the adverse action alleged." *Mills*, 476 F. Supp. 2d at 664 (citing *Holley v. Giles County,* 165 Fed. Appx. 447, 452 (6th Cir. 2006) ("[Eleven month] time lag between the speech and the adverse action is a strong indication that the action was not retaliatory."); *Timm v. Wright State Univ.,* 375 F.3d 418, 423 (6th Cir. 2004) ("Eight months is a long period of time for an employer to wait to retaliate against an employee with a termination notice.")). Accordingly, the Court finds that Plaintiff has failed to meet the final requirement of a prima facie case because she fails to show that her First Amendment protected activity caused her purported adverse employment action. Thus, the Court will dismiss Counts V, X, and XV.

### b. Plaintiff's Section 1983 Claims for Retaliation Under the Equal Protection Clause of the Fourteenth Amendment (Counts VII and XII) Are Not Recognized and Will be Denied

Next, Plaintiff alleges that Defendants retaliated against her under the Equal Protection Clause of the Fourteenth Amendment. In her complaint Plaintiff alleges that after she made complaints to the EEOC, Defendants retaliated against her. Dkt. No. 8 at 25, 30. However, unlike Counts V, X, and XV, Plaintiff does not bring these Counts under the First Amendment.

-23-

Instead, Plaintiff specifically chooses to bring these claims under only the Equal Protection Clause of the Fourteenth Amendment.   With respect to these Counts for retaliation under the Equal Protection Clause, such claims are not recognized. *See Kuhn v. Washtenaw Cnty.*, No. 10-11191, 2012 WL 1229890, at *5 (E.D. Mich. Apr. 12, 2012) *aff'd*, 709 F.3d 612 (6th Cir. 2013); *R.S.W.W., Inc. v. City of Keego Harbor*, 397 F.3d 427, 440 (6th Cir. 2005) ("[R]etaliation claim does not, however, arise under the Equal Protection Clause"); *Grossbaum v. Indianapolis–Marion County Bldg. Auth.,* 100 F.3d 1287, 1296 n. 8 (7th Cir. 1996) (Equal Protection Clause "does not establish a general right to be free from retaliation"); *Ratliff v. DeKalb County,* 62 F.3d 338, 341 (11th Cir. 1995) ("[N]o clearly established right exists under the equal protection clause to be free from retaliation").

Thus, Plaintiff's claims for retaliation should have been based on the First Amendment. Nevertheless, as we have discussed, on these facts such claims would fail because Plaintiff has not shown that an adverse employment action occurred.   Accordingly, because the claims for retaliation are not recognized under the Equal Protection Clause of the Fourteenth Amendment, Counts VII and XII will be dismissed.

### c. Plaintiff's Section 1983 Claims for Creation of Hostile Work Environment Under the Equal Protection Clause of the Fourteenth Amendment (Counts VI and XI) Will Not be Dismissed Because the Alleged Facts Can Be Construed as Creating a Severe or Pervasive Work Environment

Counts VI and XI allege that Defendants Przekop-Shaw and Kotula created a hostile work environment in violation of Section 1983 and the Equal Protection Clause of the United States Constitution.  Dkt. No. 8 at 24, 29.  The Defendants do not directly address these two claims, and instead choose to address these claims with Plaintiff's retaliation claims due to Plaintiff's references of retaliation in the Counts. *See* Dkt. No. 9 at 9 n.1.

-24-

However, despite Defendants' belief that Count VI and XI are retaliation claims, these two Counts refer specifically to the creation of a hostile work environment. Accordingly, they will be analyzed as such because the Federal Rules of Civil Procedure provide for a liberal system of notice pleading. *See* Fed. R. Civ. P. 8(a).

Pursuant to the federal rules, a plaintiff need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Such a statement must simply 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.' " *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Because the Counts specifically refer to a hostile work environment, the Court will find that Defendants had fair notice of this claim and the ground upon which it rests.[3]

Turning our attention to the claims, themselves, the Plaintiff may bring these hostile work environment claims under Section 1983 because "where an employee establishes employer conduct which violates both Title VII and rights derived from another source—the Constitution or a federal statute—which existed at the time of the enactment of Title VII, the claim based on the other source is independent of the Title VII claim, and the plaintiff may seek the remedies provided by § 1983 in addition to those created by Title VII." *See Day v. Wayne County Bd. of Auditors,* 749 F.2d 1199, 1205 (6th Cir.1984).

---

[3] Claims made pursuant to Section 1983 are not subject to heightened pleading standards. *See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 165–66, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) (rejecting heightened pleading standard for Section 1983 claims); *Jones v. Duncan,* 840 F.2d 359 (6th Cir. 1988) (holding that Section 1983 claims need not set forth in detail all the particularities of a plaintiff's claim against a defendant). Legal theories of recovery need not be spelled out as long as the relevant issues are sufficiently implicated in the pleading. Because Plaintiff's hostile work environment claim is specifically brought under a constitutional claim of equal protection, the Court finds that Defendants had fair notice of his claim and the ground upon which it rests. As such, we hold that Plaintiff has satisfied the liberal notice pleading requirements set forth in Fed. R. Civ. P. 8 with respect to her claim of a hostile work environment, grounded in an alleged equal protection violation. *See Smith v. City of Salem, Ohio,* 378 F.3d 566, 577 (6th Cir. 2004).

Plaintiff's Section 1983 hostile work environment claims are based on a violation of the Equal Protection Clause, a Constitutional provision which was in existence at the time of the enactment of Title VII, and thus may serve as an independent source for Plaintiff's Section 1983 claim. *See e.g., Hollis v. Buffalo,* 28 F.Supp.2d 812, 825 (discussing elements of equal protection claim under Section 1983 based on hostile environment sexual harassment); *Black v. Columbus Pub. Sch.*, 124 F. Supp. 2d 550, 576 (S.D. Ohio 2000) *aff'd in part, vacated on other grounds*, 79 F. App'x 735 (6th Cir. 2003) (citing *Risinger v. Ohio Bureau of Workers' Compensation,* 883 F.2d 475, 483 (6th Cir.1989), for the proposition that "the prima facie elements for a § 1983 hostile work environment are the same as those for a Title VII hostile work environment claim.").

To establish a claim of hostile work environment Plaintiff must show that: (1) she was a member of a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment complained of was based on her race or sex; (4) the harassment unreasonably interfered with the plaintiff's work performance or created a hostile or offensive work environment that was severe and pervasive; and (5) the employer knew or should have known of the racial harassment and failed unreasonably to take prompt and appropriate corrective action. *Fenton v. HiSAN, Inc.,* 174 F.3d 827, 829–30 (6th Cir.1999).

A hostile work environment is defined as a workplace "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993).  In *Burlington Northern Santa Fe Ry. Co. v. White,* the Supreme Court distinguished material adversity from "trivial harms." 548 U.S. 53, 68, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006).  In doing so, the Supreme

Court recognized that Title VII "does not set forth a general civility code for the American workplace" and an employee is not immunized "from those petty slights or minor annoyances that often take place at work and that all employees experience." *Id.*

The key to the test is whether or not the alleged harassment is severe or pervasive. Plaintiff's claims will be evaluated both objectively and subjectively: "[t]he conduct must be severe or pervasive enough that a reasonable person would find [it] hostile or abusive, and the victim must subjectively regard that environment as abusive." *Jackson v. Quanex Corp.,* 191 F.3d 647, 658 (6th Cir. 1999) (quoting *Black v. Zaring Homes, Inc.,* 104 F.3d 822, 826 (6th Cir. 1997)).

However, the harassment need not be so extreme that it produces tangible effects on job performance or psychological well-being to be actionable. *Harris,* 510 U.S. at 22, 114 S.Ct. 367. Instead, there merely must be proof of some mental distress. *Moore v. KUKA Welding Sys. & Robot Corp.,* 171 F.3d 1073, 1082 (6th Cir.1999) (interpreting *Harris,* 510 U.S. at 22, 114 S.Ct. 367).

The determination of whether harassing conduct is sufficiently severe or pervasive to establish a hostile work environment is not susceptible to a "mathematically precise test." *Harris*, 510 U.S. at 22, 114 S. Ct. 367, 371. A non-exhaustive list of factors for the Court to consider includes "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Jordan v. City of Cleveland*, 464 F.3d 584, 597 (6th Cir. 2006) (quoting *Harris,* 510 U.S. at 23, 114 S.Ct. 367).

At oral argument the Defendants argued that Plaintiff's Complaint should be dismissed because the incidents discussed by Plaintiff do not rise to the level of severe or pervasive conduct

sufficient to establish a claim of actionable harassment.  Further, in their brief, Defendants indicate that they believe Plaintiff was merely subjected to "belittling statements," and argue that "unless [these statements] are severe and pervasive they do not constitute adverse employment actions." Dkt. No. 6 at 14.

However, given the totality of the circumstances, the Court finds that the facts presented by Plaintiff show more than "belittling statements," and appear to be extensive and pervasive enough to survive Defendant's Motion to Dismiss. This Court must take Plaintiff's allegations as true.  Given the facts as presented by Plaintiff, the Court has been presented with a series of events, which–though standing alone would not constitute discrimination or an adverse employment action–given the totality of the circumstances could make up a work environment that was "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris,* 510 U.S. at 21, 114 S.Ct. 367.

Following Plaintiff's subjective complaints of discrimination involving race, sex, and potential government abuses of a government credit card Plaintiff presents facts alleging that she was repeatedly subjected to some form or type of harassment by her co-workers and supervisors from 2012-2014.  When Plaintiff complained of the harassment to her supervisors in a meeting, she asserts nothing was done but, instead Plaintiff alleges that she was told by another employer in a meeting with of Defendants Przekop-Shaw and Kotula to: "Put [her] big girl panties on, we all have folks who may treat us differently but you are under a microscope not them."

Following this statement, Plaintiff asserts that she was subjected to repeated admonishment, formal counseling, threats, berating, and belittling, false claims of being absent from her work area, unjustified low performance evaluations, and other actions. While Plaintiff

has not provided sufficient facts to allege a *prima facie* claim of intentional discrimination or retaliation, looking at the totality of the circumstances the Court finds that Plaintiff has presented adequate material facts to sufficiently allege that she was subjected to a hostile work environment. Accordingly, the Court will not Dismiss Counts VI and XI.

### 4. State Law Claims (Counts VIII, IX, XIII, XIV, XVI-XVIII) Will Be Dismissed

Aside from Counts VI and XI, Plaintiff would only have state law claims remaining. *See* Dkt. No. 8 at 26, 27, 31, 32, 34-36. Although the Court may, under 28 U.S.C. § 1367, exercise supplemental jurisdiction over the state law claims ancillary to the relief sought, for the reasons set forth below, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims.

Under the standard enunciated in *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966), and codified in 28 U.S.C. § 1367(c), this Court has broad discretion to exercise its supplemental jurisdiction. Even where the district court "arguably ha[s] supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a), the [district] court has discretion to decline to exercise its supplemental jurisdiction." *Cirasuola v. Westrin*, No. 96-1360, 1997 U.S. App. LEXIS 2242, *3 (6th Cir. April 18, 1997). Section 1367(c) provides that district courts may decline to exercise supplemental jurisdiction over related state claims if:

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). The United States Supreme Court has stated that:
> Our decisions have established that pendent jurisdiction 'is a doctrine of discretion, not of plaintiff's right,' and that district courts can decline to exercise jurisdiction over pendent claims for a number of valid reasons.

*                           *                           *

Accordingly, we have indicated that district courts should deal with cases involving pendent claims in the manner that best serves the principles of economy, convenience, fairness, and comity which underlie the pendent jurisdiction doctrine.

*City of Chicago v. International College of Surgeons*, 522 U.S. 156, 172-73 (1997) (internal citations and quotations omitted). In determining whether to exercise its supplemental jurisdiction, this Court must consider judicial economy, convenience, fairness and comity, and also avoid needless decisions of state law. *Id.* at 173; *Gibbs*, 383 U.S. at 726.

"[A] federal court with pendent jurisdiction should normally dismiss state claims without prejudice when it appears that the state issues 'substantially predominate' over the federal issues in terms of proof, scope, or comprehensiveness of the remedy sought." *Bodenner v. Graves*, 828 F.Supp. 516, 518 (W.D. Mich. 1993). In this instance, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims because his state claims substantially predominate over his federal claims. 28 U.S.C. § 1367(c)(2). Plaintiff's ELCRA and intentional and negligent infliction of emotional distress claims will either require elements of proof distinct from his federal claims, or cause a substantial expansion of the suit beyond that necessary and relevant to his federal claims.

While analysis of Plaintiff's state law ELCRA claim will overlap with the analysis for his claims under Section1983, there remains a potential for prolonged pre-trial practice, lengthened jury instructions and jury confusion that will impair judicial economy and trial convenience. While there will be some duplication of effort required by Plaintiff if he pursues his claims in the state court, the Court concludes that any advantages to be gained by trying all his state claims together with his federal claims are outweighed by the potential for confusion of the issues and

-30-

prolonged litigation proceedings. Accordingly, the Court will dismiss Plaintiff's state law claims without prejudice.

## IV. CONCLUSION

For the reasons discussed herein, the Court will **GRANT** in part and **DENY** in part Defendant's Motion to Dismiss Plaintiff's Amended Complaint [#9].

SO ORDERED.

Dated: October 20, 2014

/s/Gershwin A Drain
Hon. Gershwin A. Drain
United States District Court Judge