UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SONYA BRADLEY,

    Plaintiff,

v.

SUSAN PRZEKOP-SHAW, PETER KOTULA and DEBBIE TAYLOR,

    Defendants.
_____/

Case No. 14-cv-12303

UNITED STATES DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

UNITED STATES MAGISTRATE JUDGE
R. STEVEN WHALEN

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [43] WITH RESPECT TO DEFENDANTS PETER KOTULA AND DEBBIE TAYLOR, AND DENYING THE MOTION WITH RESPECT TO DEFENDANT PRZEKOP-SHAW**

## I. INTRODUCTION

Plaintiff Sonya Bradley ("Plaintiff") commenced this action against Steve Arwood, William Schuette, Susan Przekop-Shaw, Peter Kotula, and Frank Russell on June 12, 2014. *See* Dkt. No. 1. In her complaint, Plaintiff raised 18 different claims. *Id.* On May 11, 2015, the Complaint was Amended to include Debbie Taylor as a Defendant. *See* Dkt. No. 31. The only remaining claim is Plaintiff's Hostile Work Environment Claim against Susan Przekop-Shaw, Peter Kotula and Debbie Taylor ("Defendants").

On September 11, 2015, the Defendants filed a Motion for Summary Judgment. *See* Dkt. No. 43. The matter is fully briefed, and a hearing was held on November 30, 2015 at 2:00 p.m. For the reasons discussed below, the Court will **GRANT** the Motion with respect to Defendants Kotula and Taylor, and **DENY** the Motion with respect to Defendant Przekop-Shaw.

## II. BACKGROUND

Plaintiff began work at the Michigan Department of Licensing and Regulatory Affairs ("LARA") in January of 2011. Dkt. No. 46 at 12 (Pg. ID No. 721). She was hired to work as a Division Legal Secretary Supervisor in the Unemployment Unit of the Department of the Attorney General. *Id.* She was hired by Defendant Kotula. *Id.*

Initially, Plaintiff was supervised by her Unit's First Assistant, Donna Welch. *Id.* In June 2012, Defendant Przekop-Shaw became Plaintiff's direct supervisor. *Id.* at 13 (Pg. ID No. 722). Over the course of the next few years, the relationship between Defendant Przekop-Shaw and Plaintiff deteriorated to the point of being non-existent. Plaintiff alleges that she and other African-Americans were singled out for mistreatment, unfair criticism and harassment. Specifically, Plaintiff was required to perform "demeaning and additional assignments" that her white Colleague, Ms. Gonea was not. *Id.* at 15 (Pg. ID No. 724). Plaintiff alleges that she was eventually subordinated to Ms. Gonea, despite being of the same classification. *Id.* Plaintiff also alleges she received unfairly low performance reviews. *Id.* at 16 (Pg. ID No. 725).

In March of 2014, Defendant Kotula became Plaintiff's immediate supervisor. *Id.* Subsequently, Plaintiff claims she discovered that a number of "groundless investigatory conferences were scheduled falsely alleging that she violated AG Office work rules." *Id.* at 17 (Pg. ID No. 726). At the first conference, Plaintiff claims she explained the problems she'd been having and she was allegedly told "[p]ut your big girl panties on, we all have folks who may treat us differently but you are under a microscope not them." *Id.* Eventually, Plaintiff was terminated on March 19, 2015. *Id.* at 18 (Pg. ID No. 727).

Defendants have disputed the motivations behind certain actions, claiming mainly that low ratings and disciplinary actions were taken because Plaintiff refused to do her job.

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 56(c) "directs that summary judgment shall be granted if 'there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Cehrs v. Ne. Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 779 (6th Cir. 1998). The court must view the facts, and draw reasonable inferences from those facts, in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986). No genuine dispute of material fact exists where the record "taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Ultimately, the court evaluates "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

### IV. DISCUSSION

#### A. Hostile Work Environment

To establish a claim of hostile work environment Plaintiff must show that: (1) she was a member of a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment complained of was based on her race or sex; (4) the harassment unreasonably interfered with the plaintiff's work performance or created a hostile or offensive work environment that was severe and pervasive; and (5) the employer knew or should have known of the racial harassment and failed unreasonably to take prompt and appropriate corrective action. *Fenton v. HiSAN, Inc*., 174 F.3d 827, 829–30 (6th Cir. 1999).

Defendants' Motion only speaks to the third and fourth element of the claim. Defendants argue that any harassment suffered by Plaintiff was not "based on her race or sex," and was neither severe nor pervasive. *See* Dkt. No. 43 at 22–30 (Pg. ID No. 449–57).

*a. Racially Based Harassment*

Defendants argue that Plaintiff has brought "no evidence of any racial animus or racially based conduct." Dkt. No. 43 at 24 (Pg. ID No. 451). Defendants point to the fact that no explicitly racial epithets were said toward Plaintiff or other employees. Dkt. No. 43 at 25 (Pg. ID No. 452). Defendants further argue that the alleged race based harassment experienced by Plaintiff was similarly experienced by people of other races.

First, the fact that no racial slurs were uttered is not dispositive of the issue. *Jackson v. Quanex Corp.*, 191 F.3d 647, 662 (6th Cir. 1999) ("[E]ven though a certain action may not have been specifically racial in nature, it may contribute to the plaintiff's proof of a hostile work environment if it would not have occurred but for the fact that the plaintiff was African American."). As the Sixth Circuit explained in *Jackson*, the relevant question is whether the Plaintiff's race was a "but for" factor in the harassment. *Id.*; *see also Pusey v. United Parcel Serv., Inc.*, 393 F. App'x 366, 369 (6th Cir. 2010) ("[P]laintiff must show that the harassment was overtly racial or sexual in nature, or must establish that 'but for the fact of her sex [or race], she would not have been the object of the harassment.'"). Contrary to Defendants' contentions, the Plaintiff has presented evidence of race-based conduct to support her claim.

i. Defendant Przekop-Shaw

The Plaintiff herself, in her sworn affidavit, said she was "spitefully threatened" by Defendant Przekop-Shaw to have to work with Mr. Lockman, with whom she had a racially charged incident in the past, *see* Dkt. No. 46 (Exhibit 3 at ¶ 2), if she didn't obey Defendant Przekop-Shaw's orders. *Id.* at ¶ 10. Plaintiff also presents evidence that Defendant Shaw gave her "substantially different" treatment from another Division Legal Secretary Supervisor, Ms. Amy Gonea, who is Caucasian. *Id.* at ¶ 11; *see also* Dkt. No. 46 (Exhibit 8 at ¶ 6) ("That Amy Gonea who is white and Sonya Bradley were both classified as the same level in the same

-4-

position, but Amy Gonea was allowed to treat Ms. Bradley as if she was one of her subordinates instead of an equal counter-part."); *see also* Dkt. No. 46 (Exhibit 9 at ¶ 5) ("Ms. Bradley was treated differently than her white colleague Ms. Amy Gonea who was Ms. Przekop-Shaw division legal secretary in Lansing.").

Furthermore, there is evidence that Defendant Shaw treated other African-American employees differently from their white counterparts. *See* Dkt. No. 46 (Exhibit 8 at ¶ 9) ("[The all-black Detroit staff was] not allowed to have a holiday luncheon as we would usually do. We were told by Ms. Przekop-Shaw that if we did have one it could only be 1 hour which has to be our lunch hour. Well we later found out that Ms. Przekop-Shaw gave a holiday luncheon at her home in which her Lansing staff (all white) were invited and allowed to go to."); *see also Jackson*, 191 F.3d at 661 ("[A]n employer may create a hostile environment for an employee even where it directs its discriminatory acts or practices at the protected group of which the plaintiff is a member, and not just at the plaintiff herself.").

In the light most favorable to the Plaintiff, a reasonable juror could conclude that the alleged harassment was based on the Plaintiff's race. Accordingly, the Defendants' argument fails on this ground.

### ii. Defendants Kotula and Taylor

Plaintiff did not bring such evidence for the other two Defendants. In fact, the Plaintiff herself testified at her deposition that she believed that Defendant Kotula "liked black women." Dkt. No. 43 (Exhibit 1 at p. 43) (Pg. ID No. 471). There is also no evidence that Defendants Kotula and Taylor were in a position to stop the harassment. Therefore, the hostile work environment claim against these two Defendants fails.

*b. Pervasive/Severe*

A hostile work environment is defined as a workplace "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). In *Burlington Northern Santa Fe Ry. Co. v. White*, the Supreme Court distinguished material adversity from "trivial harms." 548 U.S. 53, 68, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006). In doing so, the Supreme Court recognized that Title VII "does not set forth a general civility code for the American workplace" and an employee is not immunized "from those petty slights or minor annoyances that often take place at work and that all employees experience." *Id.*

Defendants argue that the alleged harassment wasn't severe or pervasive enough to warrant the claim. *See* Dkt. No. 43 at 28 (Pg. ID No. 455) ("If the conduct in these cases, which included specific references to racially derogatory terms and images, was not sufficient to create a severe and pervasive hostile environment, Bradley's claims in this case . . . do not either— particularly where there is no evidence of racial animus.").

However, in our Opinion and Order Granting in Part and Denying in Part Defendants' Motion to Dismiss Plaintiff's First Amended Complaint [14], we ruled that Plaintiff had alleged sufficient facts to establish a claim for Hostile Work Environment. *Bradley v. Arwood*, No. 14-CV-12303, 2014 WL 5350833, at *17 (E.D. Mich. Oct. 20, 2014) *reconsideration denied*, No. 14-CV-12303, 2014 WL 7366109 (E.D. Mich. Dec. 24, 2014) ("However, given the totality of the circumstances, the Court finds that the facts presented by Plaintiff show more than 'belittling statements,' and appear to be extensive and pervasive enough to survive Defendant's Motion to Dismiss."). In the Opinion, we specifically addressed the sufficiency of Plaintiff's allegations:

> Plaintiff asserts that she was subjected to repeated admonishment, formal counseling, threats, berating, and belittling, false claims of being absent from her work area, unjustified low performance evaluations, and other actions. While Plaintiff has not provided sufficient facts to allege a *prima facie* claim of intentional discrimination or retaliation, looking at the totality of the circumstances the Court finds that Plaintiff has presented adequate material facts to sufficiently allege that she was subjected to a hostile work environment.

*Id.* at *17 (E.D. Mich. Oct. 20, 2014). Further, Plaintiff has provided evidence to support the allegations made in the complaint with regard to this element. Therefore, the Motion fails on this ground as well, and the claim will go to a jury.

### B. Qualified Immunity

Finally, Defendants argue they, "in their individual capacities, are entitled to summary judgment on their defense of qualified immunity to the claim of racial harassment." Dkt. No. 43 at 32 (Pg. ID No. 459). A Qualified Immunity analysis has two inquiries: (1) was there a violation of a Constitutional Right?; and (2) was the violated right a clearly established right? *Saucier v. Katz*, 533 U.S. 194, 201–02 (2001). Defendants argue, "Bradley cannot establish that Defendants committed any acts that violate clearly established law." Dkt. No. 43 at 31 (Pg. ID No. 458). However, as described above, whether or not Plaintiff's rights were violated by Defendant Przekop-Shaw is ultimately a question for the jury. Further, it's not in dispute that a race based hostile work environment would violate a clearly established right. *Cantu v. Michigan Dept. of Corrections*, 653 F. Supp. 2d 726, 746 (E.D. Mich. 2009). Accordingly, the Defendants' argument fails.

### V. Conclusion

For the reasons discussed herein, the Court **GRANTS** the Defendants' Motion with respect to Defendants Kotula and Taylor. The Motion is **DENIED** with respect to Defendant Przekop-Shaw.

IT IS SO ORDERED.

Dated: December 14, 2015 /s/Gershwin A Drain
Detroit, MI HON. GERSHWIN A. DRAIN
United States District Court Judge